## ZENA JACOBSON *v.* JAMES Y. S. YOON AND ALICE YOON.

### NO. 3022.

ARGUED JUNE 24, 1955.                    DECIDED AUGUST 12, 1955.

TOWSE, C. J., STAINBACK AND RICE, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Plaintiff was employed by the defendants as a saleslady in their store, Boys' Towne, on Beretania street in Honolulu.

On December 5, 1952, defendants informed their employees that large sums of cash shortages had occurred recently and obtained the consent in writing to search

their handbags and their persons. All the employees, including plaintiff, consented to this. The defendants examined the contents of each handbag and then a strip search of each girl was made in the ladies' room. Prior to this search the plaintiff had been sent to the bank for some change and when she returned from the bank the plaintiff asked Mr. Yoon if she might go to lunch but was told to wait.

Afterwards plaintiff was questioned in the small stockroom, some two feet or more wide. The testimony of plaintiff is that Mrs. Yoon went in first, then she (plaintiff), and Mr. Yoon came in behind her. She was asked about the missing money which she denied taking. The plaintiff claims she was detained in the stockroom for about two hours; that she had no place to sit except upon the floor; that she was subjected in the stockroom to accusations to such an extent that she started to cry, became hysterical, and pleaded that they let her go outside or that they call the police; the defendants refused both requests; that Mr. Yoon stood in front of her; that she could not pass by him; that he clenched his fist and stared at her so that she became frightened. Plaintiff then asked defendants to call a friend of hers who was working in Boys' Towne; when plaintiff's friend, also a saleslady for defendants, went into the small stockroom about five o'clock, plaintiff then called the police, using the telephone in the stockroom, and walked out with her friend to await the arrival of the police and of her husband who came subsequently. No force was used, nor were verbal threats made by defendants.

No charges were brought against plaintiff regarding the cash shortages for which defendants claimed plaintiff was responsible; from the record and the findings of the jury, plaintiff is presumably innocent of the offense of embezzlement.

Thereafter, plaintiff filed a complaint charging defendants with false imprisonment and seeking damages in the sum of $10,000, comprised of $5,000 compensatory damages and $5,000 punitive damages. The matter was tried before a jury which found for the plaintiff and gave damages in the total sum of $5,000, of which $2,500 was as compensatory damages and $2,500 as exemplary and punitive damages. From this judgment on this award the case comes to this court on appeal.

The errors relied on are:

"A. The trial court erred in denying Defendants' motion to strike all testimony referring to Defendant Mr. Yoon shooting a cat with a 'B. B.' gun" and

"B. The verdict of the jury was contrary to the evidence and to the weight of the evidence."

To take up the "B" claim of error first: Unless our new rules (Hawaii Rules of Civil Procedure effective June 14, 1954) have completely changed the power of an appellate court to review the findings of fact of a jury — and we do not so construe them (see *Parsons* v. *Bedford, infra*) — the error that the verdict of the jury is contrary to the evidence and the weight of the evidence brings nothing before this court. The Seventh Amendment to the Constitution of the United States provides that "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and *no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."* (Emphasis added.)

As stated in *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364, 377, in quoting from *United States* v. *Wonson,* 1 Gall. 5, 20; 28 Fed. Cas. 745, 750: " 'Now, according to the rules of the common law the facts once tried by a jury are never reexamined, unless a new trial is granted in the discretion of the court, before which the suit is depend-

ing, for good cause shown; or unless the judgment of such court is reversed by a superior tribunal, on a writ of error, and a *venire facias de novo* is awarded. This is the invariable usage settled by the decisions of ages.' " Again, on page 378 of *Slocum* v. *New York Life Ins. Co., supra,* in quoting from *Parsons* v. *Bedford,* 3 Pet. 433, the court said: " 'The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a *venire facias de novo,* by an appellate court, for some error of law which intervened in the proceedings.' "

The territorial court is a court of the United States within the provisions of the Seventh Amendment. (Organic Act, § 5; *Bannister* v. *Lucas,* 21 Haw. 222, 229; *Kainea* v. *Kreuger,* 30 Haw. 860, 865.)

"It must be regarded as settled that the Seventh Amendment applies to the Territories. *Thompson* v. *Utah,* 170 U. S. 343; *Black* v. *Jackson,* 177 U. S. 349; *Rasmussen* v. *United States,* 197 U. S. 516. And that 'the right of trial by jury' which the Amendment preserves is that right as it existed at common law." (*Bannister* v. *Lucas,* 21 Haw. 222, 229.)

The statement is made in *City of Lincoln* v. *Sun Vapor Street-Light Co.,* 59 Fed. 756, 761, that "If the city wished to test, by writ of error in this court, the sufficiency of the evidence to sustain a verdict for the company, it should have requested the court below, at the close of the evidence, to peremptorily instruct the jury to return a verdict in defendant's favor."

"The question of the sufficiency of the evidence for the plaintiff to support his action cannot be considered by this court. It has repeatedly been decided that a request for a ruling that upon the evidence introduced the plaintiff is not entitled to recover cannot be made by the defendant,

as a matter of right, unless at the close of the whole evidence; and that if the defendant, at the close of the plaintiff's evidence, and without resting his own case, requests and is refused such a ruling, the refusal cannot be assigned for error. *Grand Trunk Railway* v. *Cummings,* 106 U. S. 700; *Accident Ins. Co.* v. *Crandal,* 120 U. S. 527; *Northern Pacific Railroad* v. *Mares,* 123 U. S. 710; *Robertson* v. *Perkins,* 129 U. S. 233." (*Columbia Railroad Co.* v. *Hawthorne,* 144 U.S. 202, 206.)

The case of *Thompkins* v. *Missouri, K. & T. Ry. Co.,* 211 Fed. 391, states in the syllabus as follows: "A federal appellate court may not review the verdict or the finding of facts by a jury in the absence of a request to the trial court to instruct them in whose favor to find on the ground that evidence is so conclusive that no other verdict can be sustained."

While the Territory by legislation or through the courts may have power to prescribe by general rules the forms of pleadings, processes, manner of proof, appeals, etc., such rules may not enlarge or modify any substantial rights of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution of the United States. The case of *Parsons* v. *Bedford,* 3 Peters 432, 446 (U. S.), held that the Act of Congress which authorized United States District Judges to adopt the practice and modes of proceedings of the various States did not authorize the Federal courts to review a verdict of a jury although an appellate court of Louisiana could review a verdict and grant a new trial, saying: " 'No fact, tried by a jury, shall be otherwise re-examinable, in any court of the United States, than according to the rules of the common law.' This is a prohibition to the courts of the United States to re-examine any facts tried by a jury, in any other manner. The only modes known to the common law to re-examine such facts, are the granting of a new

trial by the court where the issue was tried, or to which the record was properly returnable; or the award of a *venire facias de novo,* by an appellate court, for some error of law which intervened in the proceedings. [Citing *Insurance Co.* v. *Comstock,* 16 Wall. 269; *Insurance Co.* v. *Folsom,* 18 Id. 249; *Crim* v. *Handley,* 94 U. S. 657; *The Abbotsford,* 98 Id. 444-5; *Trenier* v. *Stewart,* 101 Id. 808.]"

Most of the authorities, including United States Federal and Supreme Court decisions, hold that the rights to review a verdict in an appellate court can only be preserved where a motion for a directed verdict has been made, although a few review it where a motion for a new trial by the court below has been denied.

For example, in *City of Lincoln* v. *Sun Vapor Street-Light Co., supra,* it was held "On a writ of error the court cannot consider a proposition that the jury violated their instructions, in that, being instructed that there could be no recovery unless the claim sued on was presented to the city clerk within three months of its accrual, they awarded a recovery, although *the uncontradicted evidence was that the claim was not so presented; for this is simply a contention that the evidence was insufficient to support the verdict, which question cannot be considered in a federal appellate court, in the absence of a request for a peremptory instruction to the jury."* (Emphasis added.) It further held "The fact that the question of the sufficiency of the evidence to support the verdict was passed upon by the court below on a motion for a new trial will not authorize a review of its action on such motion."

The Hawaiian cases cited by plaintiff in error to the effect that this court will review and reverse the finding of a jury which is not supported by more than a scintilla of evidence do not contain any case wherein the right to review had not been preserved by motion for a directed

verdict or at least by motion for new trial before the court below.

The case chiefly relied upon by plaintiff in error is *Ross* v. *Insurance Co.*, 28 Haw. 404, and was one where the court below denied a motion for a directed verdict. There were also other questions upon requested instructions.

In *Wo Sing & Co.* v. *Kwong Chong Wai Co.*, 16 Haw. 17, the sufficiency of the evidence was reviewed on the trial court's directing a verdict for plaintiff.

*Smith* v. *Hamakua Mill Co.*, 14 Haw. 669, came to this court after the motion for a new trial had been overruled by the circuit judge. From this case is taken the quotation in appellant's brief that an appellate court may set aside a verdict of a jury and grant a new trial when the verdict is against the weight of the evidence *only when there is error of law*, Frear, C. J., stating that where there is no evidence at all or no substantial evidence to support the verdict such is an error of law. However, it will be noted that the right of review had been preserved at least by a motion for a new trial which is one of the exceptions urged on the appeal. It will also be noted that Galbraith, J., in his dissenting opinion, at page 679, points out the distinction between a motion for a new trial and a directed verdict, stating: "To set aside the verdict of the jury on the ground that it is not supported by the evidence is, it seems to me, to fly in the face of the Seventh Amendment to the Constitution of the United States by re-examining a fact or facts tried by a jury in a manner 'otherwise than according to the rules of the common law.' * * * *If there had been no evidence for the plaintiff it would have been the duty of the trial judge to have taken the case from the jury and to have directed a verdict but when the judge determined that there was evidence to go to the jury then the jury became the exclusive judges of its weight and that*

*finding is only subject to review in the manner provided by the rules of the common law."* (Emphasis added.)

Two criminal cases were also cited by appellant. *Territory* v. *Gagarin,* 36 Haw. 1, is not in point since under section 3563, Revised Laws of Hawaii 1935, the appellate court was mandated to review the evidence where there was a sentence of death. The other case, *Territory* v. *Young,* 32 Haw. 628, was one where one of the errors assigned was that the court below erred in refusing to direct a verdict for defendant " 'in that the weight of the evidence was insufficient to find the defendant guilty beyond a reasonable doubt; * * *.' "

In the present case the trial judge refused to set aside the verdict although apparently a motion was duly made, as was also a request for a directed verdict. Neither of these was assigned as an error and relied upon in the brief.

In connection with a motion for a new trial the trial judge has a wide discretion when the motion is made on the ground that the verdict is against the weight of the evidence, but an appellate court has no such discretion and may grant a new trial only when there is an error in law which may, of course, be the refusal of the trial judge to direct a verdict when there is not more than a scintilla of evidence in behalf of the plaintiff.

However, assuming but not deciding that this court might consider reviewing the motion for new trial and the request for a directed verdict though not set forth by appellant as error relied upon, we still would be of the opinion that there was more than a scintilla of evidence to sustain the verdict of the jury.

Counsel for appellant claims no force was used whatever and no threats were made. There is no dispute as to the fact that no force was used to detain plaintiff and no verbal threats were made. However, threats may not necessarily involve the use of language. The plaintiff,

according to her testimony, being in abject fear did not dare attempt to pass the defendant who was standing in the two-foot passageway; defendant refused to let her out or to call police, and stood in the narrow passageway with clenched fists and threatening looks and was breathing "real heavy." A threat can be made as easily with gestures and glares as with words. Those of us who are old enough to remember the silent pictures have no doubt whatever that threats and intimidation can be made without words. We never had any doubt when the villain had the heroine cornered and proceeded to clench his fists, glare and breathe like a truck horse that he meant no good to the heroine. It is trite but true that acts frequently speak louder than words.

The jury was properly instructed (no objections to the instructions being relied upon) and the matter of what weight was to be given to the actions of the defendants was solely a question for the jury. They were instructed that to constitute false imprisonment it was not necessary that actual physical force be employed or threats (verbal) upon the part of the defendants be made, that it was sufficient if the *acts* and language of the defendants were such as to induce a reasonable apprehension of force. Further, they were instructed with reference to the element of consent by the plaintiff; that consent would be a defense, but that if they found from the evidence that the plaintiff submitted to this restraint by any threatened or *reasonably apprehended* use of force by defendants there would be no consent to such restraint.

The other error relied upon is that the trial court erred in denying defendants' motion to strike all testimony referring to the defendant Mr. Yoon shooting a cat with a "B. B." gun.

On cross examination when plaintiff testified that she was afraid of physical violence at the hands of Mr. Yoon,

the following questions were asked by defendants:

"Q. Afraid of physical violence?

"A. Yes.

"Q. Because of Mr. Yoon?

"A. I saw Yoon shoot a cat with a BB gun, if that's got anything to do with it."

The matter was further discussed on re-direct and on re-cross examination; when asked if she were afraid of Mr. Yoon because she saw him shoot a cat with a "B. B." gun, she answered no, but it certainly ran through her mind when she was in the stockroom. On further re-cross she testified that she did not remember whether the shooting of the cat with the "B. B." gun occurred to her when she was in the stockroom, whereupon counsel for defendants made a motion to strike all the testimony relating to the matter and the "B. B." gun on the ground "it has nothing to do with the then restraint since she has now testified that she doesn't remember that it occurred to her."

The court overruled the motion stating that "she may have had a reaction as a result of that, without the actual incident itself having occurred to her at the time."

The answer was brought out on cross examination by the defendants and was responsive to the question. We do not consider it error for the trial judge to refuse to strike out what counsel himself brought out in evidence under such circumstances and, further, if this refusal was error it is not such error as would justify a reversal.

What has been said regarding damages in general applies to the question of punitive damages. The jury, which was properly instructed on punitive damages, was the sole judge of the testimony of the witnesses and of the weight to be given thereto. The amount of the award by it is not so excessive as to necessitate the conclusion that the verdict was the result of prejudice. There is more than a

scintilla of evidence to sustain the jury's findings both on general and punitive damages.

Judgment sustained.

*Katsugo Miho* and *W. G. Chuck* (*Fong, Miho, Choy & Chuck* with him on the briefs) for defendants-appellants.

*A. K. Trask* (also on the brief) for plaintiff-appellee.